**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GREAT OAKS LEGACY CHARTER SCHOOL, <br><br> Plaintiff, <br><br> v. <br><br> M.V. *on behalf of* N.W., <br><br> Defendant. | Civil Action No. 25-4180 (JXN)(AME) <br><br> **OPINION** |

**NEALS**, District Judge

Before the Court is Defendant M.V. ("Mother") on behalf of N.W.'s ("Student") (collectively, "Defendant") motion to dismiss Great Oaks Legacy Charter School's ("Great Oaks") complaint as moot. (ECF No. 21.) Great Oaks opposed (ECF No. 22), and Defendant replied (ECF No. 23). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED *in part***, the Administrative Law Judge's ("ALJ") ruling (ECF No. 1-4) reversing Student's suspension is **AFFIRMED**, and the Complaint is **DISMISSED**.

I.      **BACKGROUND**

Great Oaks is a New Jersey charter school. (Compl. ¶ 6, ECF No. 1.) On September 30, 2024, Student, then a senior at Great Oaks, came to school with thirty-seven bullets in his backpack, including thirty hollow-point bullets. (*Id.* ¶¶ 7, 12, 14.) A staff member found the bullets and notified the school's director. (*Id.* ¶¶ 15–16.) Student told the school director the bullets

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

belonged to a friend and he forgot they were in his backpack. (*Id.* ¶ 17.) Great Oaks called Student's father, and later, the police. (*Id.* ¶¶ 18–20.) Because hollow-point bullets are illegal in New Jersey, *see* N.J.S.A. 2C:39-3(f), the police removed Student from Great Oaks (Compl. ¶ 20). Later that day, Great Oaks suspended Student from October 1, 2024, through October 8, 2024, "pending an investigation." (*Id.* ¶ 21.)

On October 8, the Great Oaks Board of Trustees ("Board") held a disciplinary hearing "to determine if credible evidence existed to impose disciplinary action against Student for possession of ammunition on school property," which Student and his parents attended. (*Id.* ¶¶ 22, 23.) At the hearing, Student "took responsibility for bringing the ammunition to [Great Oaks] and apologized." (*Id.* ¶ 26.) Student explained he "obtained the ammunition from a friend from a summer program, expressed that he learned that he could not trust many people, and acknowledged that his actions put himself, his family, and the School at risk." (*Id.* ¶ 27.) After the hearing, the Board deliberated and unanimously concluded "that sufficient evidence existed to sustain the charges of possession of dangerous objects in violation of the School's disciplinary code." (*Id.* ¶ 29.) Moreover, the Board "found that the Student's actions presented a continuing danger to the physical well-being of other students and staff and further concluded that expulsion was necessary to protect the School community." (*Id.* ¶ 30.) The next day, Great Oaks informed Student's parents of the expulsion.

Student had an Individualized Education Program ("IEP") for attention deficit hyperactivity disorder. (*Id.* ¶ 12.) On October 11, Student's IEP team, including his Mother, conducted a "manifestation determination review in accordance with and within the ten-day time frame prescribed by 20 U.S.C. § 1415(k)(1)(E)." (*Id.* ¶ 32.) Following review, the IEP team "determined that the Student's possession of ammunition at the School was not a manifestation of

2

his disability, as it was neither caused by nor had a direct and substantial relationship to his disability." (*Id.* ¶ 33.) The next day, Student's parents appealed Student's expulsion. (*Id.* ¶ 35.) In November, the Board upheld the expulsion. (*Id.* ¶ 39.) And in January 2025, the Board "revised the expulsion" to a suspension for the rest of the school year, to be completed at home as an "interim alternative educational setting." (*Id.* ¶ 41.) Great Oaks did not, however, "file an expedited petition for due process." (ALJ Op. at 3, ECF No. 1-4.)

In February 2025, Mother "filed a request for an expedited due process hearing with the New Jersey Department of Education, Office of Special Education." (Compl. ¶ 45.) The hearing took place before an ALJ. (*Id.* ¶ 51.) After hearing oral argument, the ALJ issued findings of fact and conclusions of law on February 28, 2025. (*See* ALJ Op.) The ALJ summarized the law as follows:

> If the discipline results in the student being kept out of school for more than ten consecutive days, the school must comply with the procedural protections delineated in 20 U.S.C. § 1415(k)(1)(H) and N.J.A.C. 6A: 14-2.8(d). One of these protections is a manifestation determination review. In this review, school representatives, parents, and relevant members of the student's IEP team must determine if the behavior that gave rise to the violation of school rules or policies was a manifestation of the student's disability. 20 U.S.C. § 1415(k)(1)(E). If the behavior was a manifestation of the student's disability, then the student must be returned to the current placement. 20 U.S.C. § 1415(k)(1)(F)(iii). If, however, the behavior was not a manifestation of the student's disability, the student can be disciplined. 20 U.S.C. § 1415(k)(5)(A).
>
> When a student with a disability is removed from a current placement for more than ten cumulative or consecutive school days in any one school year, the board of education is required to provide services to the extent necessary to enable the student to progress appropriately. N.J.A.C. 6A:14-2.8(e). Further, when a removal constitutes a change of placement and it is determined that the behavior in question is not a manifestation of the student's disability, the student's IEP team shall determine the extent to which services are necessary to enable the student to progress appropriately in a general curriculum and towards achieving the goals set out in the IEP. N.J.A.C. 6A:14-2.8(e).
>
> In addition, the removal of a student with a disability to an interim alternative educational setting, in accordance with 20 U.S.C. § 1415(k)(1)(G), must not be

longer than forty-five calendar days. Removal of a student with a disability to an interim alternative education setting, even for dangerousness, must not exceed forty-five days. N.J.A.C. 6A:14-2.8(f). To remove a disabled student on the grounds of "dangerousness," the district must show that maintaining the student in the current placement is "substantially likely to result in injury to the child or to others." 20 U.S.C. § 1415(k)(3)(A). To effectuate this request, the district must request an expedited hearing. The ALJ can order a change in placement, but the change in placement must not be for more than forty-five days. N.J.A.C. 6A:14-2.7(n).

A student with a disability who is removed to an interim alternative educational setting, irrespective of whether it was a manifestation of the student's disability, must continue to receive educational support. 20 U.S.C. § 1415(k)(D)(i). A student with a disability who has been removed to an interim alternative educational setting, irrespective of whether it was a manifestation of the student's disability, for possessing a weapon at school can be suspended. However, the student cannot be suspended for more than forty-five days. 20 U.S.C. § 1415(k)(G).

. . . Long-term suspensions for a student with a disability must be carried out under N.J.A.C. 6A:16-7.3(g). In determining or changing the student's educational placement to an interim or alternate educational setting, the district must proceed in accordance with N.J.A.C. 6A:14. N.J.A.C. 6A:16-7.3(g). N.J.A.C. 6A:14 imposes a forty-five day limits on long-term suspensions.

(*Id.* at 4–5.) The ALJ then observed:

There is no dispute that N.W. is a student with a disability who has been suspended from school for more than forty-five days. There is also no dispute that the behavior that resulted in the suspension was not a manifestation of his disability. The sole issue for determination is whether the respondent is permitted under the regulations to suspend N.W., a student with a disability, for more than forty-five days without filing an expedited petition for due process.

(*Id.* at 5.) Citing two other ALJ decisions, Student argued that Great Oaks

does not have the authority under either 20 U.S.C. § 1415 or N.J.A.C. 6A:14 to suspend [Student] for more than forty-five days. [Student] also contends that even if [Great Oaks] were permitted under the federal statute to suspend [Student] for greater than forty-five days, the New Jersey regulations are applicable and, because they afford greater protections for students with disabilities are controlling; therefore, respondent is limited to a forty-five-day suspension.

(*Id.* at 6.)

4

Great Oaks argued, because this case did not involve "serious bodily injury, . . . 20 U.S.C. § 1415(k) was applicable, which [Great Oaks] acknowledge[d] does limit a suspension to forty-five days." (*Id.*) Citing *N.C. o/b/o J.C. v. Ocean City Bd. of Educ.*, EDU 2346-17, Initial Decision, (January 12, 2018), Great Oaks asserted that the forty-five-day limit in 20 U.S.C. § 1415(k) was "limited to specific, enumerated circumstances that do not apply to [Student]." (*Id.*) The ALJ disagreed, finding the facts in *Ocean City* "clearly distinguishable" because, unlike the student in *Ocean City*, Student had a disability, had never been suspended before, did not injure anyone, and did not have a weapon or firearm. (*Id.*)

Great Oaks also argued the "forty-five-day time limit does not apply to [Student] because [he engaged in] 'highly dangerous behavior.'" (*Id.*) Citing *Lawrence Twp. Bd. of Educ. v. D.F. ex rel. D.F.*, 2007 N.J. AGEN LEXIS 26 (Jan. 9, 2007), Great Oaks stated it had a duty to provide a safe learning and working environment, and the bullets made Student a threat to the safety of students and staff at Great Oaks. (*Id.* at 6–7.) The Court found *Lawrence Township* distinguishable, noting "[i]n that case, there were multiple incidents of violent, in-school, physical assaults against fellow students, establishing clear danger to others. Here, there is no physical violence, nor are there any threats." (*Id.* at 7.) The ALJ explained she was not "persuaded that bringing bullets to school rises to the level of dangerousness contemplated by the IDEA." (*Id.*) Rather, the ALJ noted "[Student] accepted responsibility for bringing the bullets to the school, apologized and acknowledged that his actions put himself, his family, and the school at risk. However, [Student] has never had any serious disciplinary issues, and this was his first suspension." (*Id.*)

The ALJ thus held:

The regulations for students with a disability are clear. A student with a disability cannot be suspended for more than forty-five days. If the district wanted to suspend [Student] for the remainder of the school year, it must file for an expedited due process hearing before the expiration of the forty-five days, which it did not do.

5

> The forty-five-day limit is consistently applied throughout N.J.A.C. 6A:14-2.8, N.J.A.C. 6A:16-7.3(g) and 20 U.S.C. § 1415(k). The dispute here, however, is a very limited one, based on necessarily limited facts, in a very highly regulated area of the law where the protection of students with disabilities has been made a priority. I CONCLUDE that [Great Oaks] did not have the authority to suspend [Student], a student with a disability, for more than forty-five days. I further CONCLUDE that [Student] must be returned to in-person general education instruction at Great Oaks Legacy Charter High School.

(*Id.*) In May 2025, Great Oaks appealed the ALJ's determination to this Court under 20 U.S.C. § 1415(i)(2)(A). (*See* Compl.) Great Oaks argued that the ALJ did not provide an impartial hearing and misapplied the IDEA to Student, whose conduct was not a manifestation of his disability. (*Id.* ¶¶ 70–83.) Great Oaks sought a declaration that the ALJ violated its procedural and substantive due process rights, and an injunction to prevent Student from attending Great Oaks. (*Id.* at 15.)

A month after Great Oaks appealed, Student graduated. (*See* Def.'s Moving Br. at 1, ECF No. 21.) Defendant moved to dismiss, arguing Student's graduation mooted the Complaint. (*Id.*) Great Oaks opposed, asserting that Student's graduation was a harm capable of repetition yet evading review. (Pl.'s Opp'n, ECF No. 22.) Defendant replied. (Def.'s Reply, ECF No. 23.)

## II.   LEGAL STANDARD

Under Article III of the Constitution, federal courts may hear only "Cases" and "Controversies." U.S. Const. art III, § 2, cl. 1. "Thus, federal courts can entertain actions only if they present live disputes, ones in which both sides have a personal stake." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009)). The doctrine of mootness ensures a live controversy exists "throughout the life of the lawsuit." *Clark v. Governor of N.J.*, 53 F.4th 769, 775 (3d Cir. 2022) (quoting *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016)). A case is moot if the Court cannot grant "any effectual relief whatever to the prevailing party." *Id.* (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016)). "The central question of all

6

mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007) (quoting *In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003)). The party asserting mootness bears a "heavy burden" of persuading the Court "that there is no longer a live controversy." *Hartnett*, 963 F.3d at 305–06 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

III.    **DISCUSSION**

A.    **Is The Case Moot?**

Mootness "turns on the relief sought." *Rd.-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 356 (3d Cir. 2024). Great Oaks sought to enjoin Student from returning to school. The Court cannot do so because Student graduated. Thus, as to the injunction Great Oaks sought, the Court cannot grant any effective relief whatsoever. *Clark*, 53 F.4th at 775. The Complaint, therefore, is **dismissed as moot** to the extent it seeks to enjoin Student's return to school.

That is not the only relief Great Oaks requested, however. The school also asked this Court to reverse the ALJ's decision. Both parties have a personal stake in the outcome: Great Oaks, because it could affect future disciplinary cases; and Student, because reversing the ALJ and reinstating his year-long suspension would alter his disciplinary record and potentially call into question the validity of his graduation from Great Oaks. The Court can grant relief to either party by affirming or reversing the ALJ. Accordingly, Defendant has not met its "heavy burden" of proving mootness as to the review of the ALJ's determination. *Hartnett*, 963 F.3d at 305–06.

B.    **Did the ALJ Err in Overturning Student's Suspension?**

In IDEA cases, the Court reviews an ALJ's decision under a "modified *de novo*" standard. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). The Court gives "due weight" to

the ALJ's findings of fact. *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). The Court must treat the ALJ's factual findings as "prima facie correct." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). The Court, however, "owes no deference" to the ALJ's conclusions of law. *In re Educ. Assignment of Joseph R.*, 318 F. App'x 113, 118 (3d Cir. 2009).

20 U.S.C. § 1415(k) governs the removal of students with disabilities who violate their school's code of student conduct. Removal includes expulsion or transfer to "an appropriate interim alternative educational setting, another setting, or suspension." 20 U.S.C. § 1415(k)(1)(B). A school may remove a student with a disability for up to ten days for a conduct violation. *Id.* If the school wishes to remove a student for more than ten days, the school, the parent, and "relevant members of the IEP team" must decide whether the conduct in question was a manifestation of the student's disability. 20 U.S.C. § 1415(k)(1)(E). If the conduct was a manifestation of the student's disability, they must be returned to school. 20 U.S.C. § 1415(k)(1)(F)(iii). If the conduct was not a manifestation of the disability, the school may remove the student for more than ten days. 20 U.S.C. § 1415(k)(5)(A). And, regardless of whether behavior was a manifestation of a student's disability, the school may remove a student to an interim alternative educational setting for up to forty-five days if the student (a) brings a weapon to school, (b) "knowingly possesses or uses illegal drugs" at school, or (c) "inflicted serious bodily injury upon another person while at school." 20 U.S.C. § 1415(k)(1)(G). The school may also remove a student to an interim alternative educational setting for forty-five days if an ALJ finds the student remaining in school "is substantially likely to result in injury to the [student] or to others." 20 U.S.C. § 1415(k)(3)(A).

"New Jersey has adopted a statute and regulations to comply with IDEA." *Bd. of Educ. of Lenape Reg'l High Sch. Dist. v. N.J. State Dep't of Educ.*, 399 N.J. Super. 595, 600 (App. Div. 2008). New Jersey's regulations implement IDEA and set forth additional rules for removing students with disabilities. *See* N.J.A.C. 6A:14-2.8; 6A:16-7.3. The regulations provide:

> Disciplinary action initiated by a district board of education that involves removal to an interim alternative educational setting, suspension for more than 10 school days in a school year, or expulsion of a student with a disability shall be in accordance with 20 U.S.C. § 1415(k). . . . However, removal to an interim alternative educational setting of a student with a disability in accordance with 20 U.S.C. § 1415(k) shall be for a period of no more than 45 calendar days.

N.J.A.C. 6A:14-2.8(d). The regulations also state:

> In the case of a removal for drug or weapons offenses, or because the student caused a serious bodily injury in accordance with 20 U.S.C. § 1415(k) . . . , or a removal by an [ALJ] for dangerousness consistent with 20 U.S.C. § 1415(k) . . . , the district board of education shall provide services to the student with a disability consistent with 20 U.S.C. § 1415(k) . . . . However, removal to an interim alternative educational setting of a student with a disability in accordance with 20 U.S.C. § 1415(k) shall be for a period of no more than 45 calendar days.

N.J.A.C. 6A:14-2.8(f). If the school seeks to remove a student because "it is dangerous for the student to be in the current placement" the school must request an expedited due process hearing. N.J.A.C. 6A:14-2.7(n).

Here, Great Oaks expelled Student but later suspended him for the rest of the year in an interim alternative educational setting. The ALJ concluded that, under N.J.A.C. 6A:14-2.8, Great Oaks could not remove Student to an interim alternative educational setting for more than forty-five days. On appeal, Great Oaks argues the forty-five-day suspension limit did not apply because Student's behavior was not a manifestation of his disability.

The Court disagrees. The plain language of N.J.A.C. 6A:14-2.8(d) and N.J.A.C. 6A:14-2.8(f) prevents Great Oak from placing Student in an interim alternative educational setting for more than forty-five days.

The Court first examines the plain text of both regulations. The "basic tenets of statutory construction apply to construction of regulations." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne*, 497 F.3d 337, 351 (3d Cir. 2007). If a statute or rule is unambiguous, the Court "must give effect to its plain meaning." *Consol Pa. Coal Co., LLC v. Fed. Mine Safety & Health Review Comm'n*, 941 F.3d 95, 104 (3d Cir. 2019). A statute or rule is ambiguous if, after exhausting the Court's tools of statutory construction, "the natural reading of a provision remains elusive." *Lundeen v. 10 W. Ferry St. Operations LLC*, 156 F.4th 332, 340 (3d Cir. 2025) (quoting *In re Price*, 370 F.3d 362, 369 (3d Cir. 2004)).

The Court, as always, starts with the text. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself."). Courts give words "their ordinary, contemporary, common meaning" at the time they were written. *Wisc. Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). The Court reads words "in their context and with a view to their place in the overall statutory scheme." *Bethancourt Soto v. Soto*, No. 25-16200, 2025 WL 2976572, at *3 (D.N.J. Oct. 22, 2025) (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014)). And the Court must "give effect, if possible, to every clause and word of [the] statute." *Fischer v. United States*, 603 U.S. 480, 486 (2024) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)).

Here, N.J.A.C. 6A:14-2.8(d) states:

> Disciplinary action initiated by a district board of education that involves removal to an interim alternative educational setting, suspension for more than 10 school days in a school year, or expulsion of a student with a disability shall be in accordance with 20 U.S.C. § 1415(k). . . . However, removal to an interim alternative educational setting of a student with a disability in accordance with 20 U.S.C. § 1415(k) shall be for a period of no more than 45 calendar days.

Under the plain text of the regulation, expulsions, suspensions for more than ten days, and removals to interim alternative educational settings must comply with 20 U.S.C. § 1415(k).[2] The next sentence begins with "however," which "[m]odif[ies] a sentence or clause [to] express[] a concession or qualification relating to the preceding one." *However*, Oxford Eng. Dictionary, https://doi.org/10.1093/OED/4615591491 (last visited Jan. 30, 2026). The qualification is that a school may not remove a student with a disability to an interim alternative educational setting for more than forty-five days.

N.J.A.C. 6A:14-2.8(f) follows the same structure. It starts with a requirement that the school provide services to the student for removal in accordance with 20 U.S.C. § 1415(k) for weapons, drugs, causing serious bodily injury, or dangerousness. The next sentence, again starting with "however," provides the school cannot remove a student to an interim alternative educational setting for more than forty-five days. *Id.* Taken together, both regulatory provisions require schools follow the IDEA's disciplinary procedures, except that removals to interim alternative educational settings cannot last longer than forty-five days.

Here, it is undisputed that Great Oaks revised Student's expulsion to "removal to an interim alternative [educational] setting" for the rest of the school year. (Compl. ¶¶ 41–42.) Because N.J.A.C. 6A:14-2.8(d) and (f) limited Student's removal to an interim alternative educational setting to forty-five days, the ALJ did not err in concluding Great Oaks lacked the authority to do so for the rest of the school year.[3]

---

[2] "[T]he word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016).

[3] Great Oaks also argues the ALJ's purportedly incorrect interpretation of law deprived Great Oaks of the "opportunity for an impartial due process hearing." 20 U.S.C. § 1415(f). Under IDEA, an ALJ must have the knowledge and ability to (1) "understand . . . Federal and State [law and] regulations pertaining to [special education], and legal interpretations . . . by Federal and State courts"; (2) "conduct hearings in accordance with appropriate, standard legal practice"; and (3) "render and write decisions in accordance with appropriate, standard legal practice." 20 U.S.C. §

11

Great Oaks replies that, because Student's behavior was not a manifestation of his disability, IDEA's protections do not apply, and consistent with 20 U.S.C. § 1415(k)(1)(C), it may impose standard disciplinary measures on Student. (*Id.* ¶¶ 73–80.) But N.J.A.C. 6A:14-2.8(d) expressly provides that *even if* a school disciplines a student with a disability according to 20 U.S.C. § 1415(k), it may not remove a student to an interim alternative educational setting for more than forty-five days. In other words, the question is not whether Student's behavior was a manifestation of his disability; the question is whether Great Oaks removed Student to an interim alternative educational setting for more than forty-five days. Because the answer is yes, Great Oaks ran afoul of N.J.A.C. 6A:14-2.8(d).[4]

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint as moot (ECF No. 21) is **GRANTED** as to the Complaint's request for injunctive relief, the ALJ's decision (ECF No.

---

1415(f)(3)(A). Great Oaks does not argue the ALJ was biased or had an economic stake in the outcome. Great Oaks, instead, argues the ALJ misapplied the law. But a claim under 20 U.S.C. § 1415(f) "based on the hearing officer's purported lack of knowledge and understanding, must allege, at minimum, that the hearing officer was unqualified, did not receive appropriate training, or displayed a pattern of incompetency so egregious that it violated the plaintiff's right to an impartial hearing." *A.C. v. W. Windsor - Plainsboro Reg'l Bd. of Educ.*, No. 21-13016, 2022 WL 1468199, at *6 (D.N.J. May 10, 2022). Great Oaks does not so allege. And, in any event, the ALJ did not misapply the law.

[4] Great Oaks cites *Ocean Township Board of Education v. E.R. ex rel. O.R.*, No. 13-1436, 2014 WL 936738 (D.N.J. Mar. 10, 2014), to argue the ALJ erred in finding Great Oaks could not suspend Student for more than forty-five days. The Court disagrees. That case involved a different part of the statute (the "stay put provision of the IDEA"), considered a different legal question (what constituted the student's "current educational placement"), and applied a different legal standard (the factors for a preliminary injunction). *Id.* at *2. The other case Great Oaks cites, *Gutin v. Washington Township Board of Education*, 467 F. Supp. 2d 414 (D.N.J. 2006) is equally unpersuasive. That case involved an expulsion. *Id.* at 420. This case involves removal to an interim alternative educational setting. The distinction is critical because the additional forty-five-day limit in N.J.A.C. 6A:14-2.8(d) applies *only* to removals to interim alternative educational settings.

1-4) is **AFFIRMED**, and the Complaint (ECF No. 1) is **DISMISSED**. An appropriate Order

accompanies this Opinion.


**DATED: 2/19/2026**

HONORABLE JULIEN XAVIER NEALS
United States District Judge

13